**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**RYAN MICHELL, and**
**MICHELL INVESTMENTS, LLC,**
**A New Mexico Limited Liability Company,**

**Plaintiff,**

**v.** **CIV 12-0316 KBM/GBW**

**TORRANCE COUNTY, SERGEANT K. CLARK, DEPUTY ROY THOMPSON, TORRANCE COUNTY SHERIFF DEPARTMENT AND FORMER DEPUTY KEITH BLOSS,**

**Defendants.**

# MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS *(DOC. 24)*

THIS MATTER comes before the Court on Defendants' Rule 12(B)(6) Motion to Dismiss *(Doc. 24)*, filed July 19, 2012 and fully briefed on August 28, 2012. *See Docs. 24, 32, 35, 36.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 8, 11, 27, 31, 33.* Having reviewed the parties' submissions and the relevant law, I find that Defendants' Motion is well-taken in part and will therefore grant the Motion in part.

## I. BACKGROUND

Plaintiff Ryan Michell is the sole member and manager of Plaintiff Michell Investments, L.L.C., which owns and operates a lounge and gentlemen's club, 203 Club, located off Interstate 40 near Moriarty, New Mexico. *See Doc. 23* at ¶¶ 2, 11. On April 4, 2010, Mr. Michell

instructed 203 Club's security personnel to remove a patron, Carl Tune, from the premises. *See id.* at ¶ 17. Sometime thereafter, Deputy Sheriff Roy Thompson of the Torrance County Sheriff Department picked up Mr. Tune and sought to investigate his injuries. *See id.* at ¶¶ 18-19. In the parking lot of 203 Club, Mr. Michell invited Deputy Thompson to interview his security personnel and any patron who had witnessed Mr. Tune's removal from the premises. *See id.* at ¶ 22. After Deputy Thompson "persisted in questioning [his] sobriety," Mr. Michell asked him to "either conduct his investigation into Mr. Tune's allegations or leave the premises and allow him to return to work." *Id.* at ¶ 23. Deputy Thompson then handcuffed Mr. Michell, who was ultimately arrested and charged with battery against Mr. Tune. *See id.* at ¶¶ 24-26.

Plaintiffs contend that Defendants, including Deputy Thompson and two other individual officers as well as Torrance County and the Torrance County Sheriff Department ("TCSD"), violated his Fourth Amendment rights in two respects—by remaining on Plaintiffs' private property after being instructed to either investigate or leave (Count I) and arresting Mr. Michell without a warrant and without probable cause (Count II). *See id.* at 5.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Moreover, although the Court must assume the truth of the properly alleged, or "well-pleaded," facts in the Complaint, the Court has no obligation to accept conclusory allegations as true. *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

**B. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials will be resolved prior to discovery.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987)). It is therefore important to resolve immunity questions "at the earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) *(per curiam)*).

"In resolving a motion to dismiss based on qualified immunity,[1] a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quotations and ellipses omitted)). The Court may consider the two questions in any order. *Pearson*, 555 U.S. at 236.

[1] Because qualified immunity is an affirmative defense and is not contained in the complaint, a motion to dismiss asserting qualified immunity "is more accurately described as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) rather than a motion for failure to state a claim under Rule 12(b)(6)." *Brown*, 662 F.3d at 1160, n. 4.

## III. ANALYSIS

### A. The Court Will Evaluate the Motion According to the Standards of Rule 12.

"It is well-established [] that in determining whether to grant a motion to dismiss, the district court [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002)). Where matters outside the pleadings are considered, a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

Plaintiffs argue that because Defendants attached two documents outside of the pleadings to their Motion, the Court must evaluate the Motion according to the summary judgment standard. *See Doc. 32* at 1-2. Specifically, Defendants attach two court documents—a form entitled "Commitment/Bond Amount/Disposition/Release" and a form entitled "Arrest/Booking Report." *See Docs. 24-1, 24-2.* Defendants contend that these documents do not require conversion of their Motion to a Rule 56 standard because the Court may take judicial notice of them. *See Doc. 24* at 10, n.2.

The Court need not, and has not, relied upon or otherwise considered attachments either to Defendants' Motion or to Plaintiffs' Response thereto, and I will therefore consider the Motion pursuant to FED. R. CIV. P. 12. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 662, n. 3 (10th Cir. 2012) (indicating that the district court must rely upon extraneous matters in order to convert a Rule 12 motion to one for summary judgment).

**B. Plaintiff Has Not Alleged Facts Sufficient to Support a Claim for Liability On the Parts of Defendants Torrance County, TCSD, or Sergeant K. Clark.**

The theory of supervisory liability permits a plaintiff "to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Brown*, 662 F.3d at 1163-64 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 2150 (2011)) (ellipses omitted). However, employers such as municipalities "cannot be held liable *solely* because [they] employ a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). "[T]o establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Dodds*, 614 F.3d at 1199.

In the present case, Plaintiffs make no factual allegations against Torrance County, the TCSD, or Sergeant K. Clark. *See generally Doc. 23.* The Amended Complaint does not even contain any conclusory allegations concerning any supervisory defendant's role in creating or implementing policies that led to the alleged violation of Plaintiffs' rights. *See id.* Moreover, Plaintiffs fail to respond to the Motion regarding supervisory liability, thereby effectively consenting to the Motion as to these Defendants. D.N.M.-LR 7.1(b) (providing that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion"). As a result, I will grant Defendants' Motion *(Doc. 24)* as to Defendants Torrance County, Torrance County Sheriff Department, and Sergeant K. Clark.

### C. Plaintiffs' Claims For Violations of the Fourth Amendment Should Survive the Motion Solely With Respect to Plaintiff Michell's Arrest.

#### *1. The Fourth Amendment Does Not Require the Individual Defendants to Leave the 203 Club Upon Plaintiffs' Request.*

The Fourth Amendment protects the public from "unreasonable searches and seizures." *See* U.S. Const. amend. IV. "The Supreme Court long ago 'recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises.'" *Club Retro, L.L.C v. Hilton*, 568 F.3d 181, 195 (5th Cir. 2009) (quoting *New York v. Burger*, 482 U.S. 691, 699 (1987)). Therefore, law enforcement officers act unconstitutionally when they enter a commercial property to search for evidence of a crime without a warrant,[2] consent, or other exigent circumstances. *See id.* (citing *Donovan v. Dewey*, 452 U.S. 594, 598, n.6 (1981)). While a law enforcement officer may enter the premises "in the same manner as a private person," he is not necessarily "authorized to conduct a general search for incriminating materials." *See id.* at 196 (citing *Lewis v. United States*, 385 U.S. 206, 211 (1966)). "[A]ccepting a public invitation is permissible, but, absent cause, does not justify searches once inside the commercial establishment." *Id.* at 197. *See also Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329 (1979) (rejecting "the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees").

Similar to the *Club Retro* case, the Tenth Circuit has held that officers' "protracted" conduct, or their "assertion of law enforcement authority over the entire establishment"—turning

[2] Warrantless searches may be acceptable in pervasively regulated businesses pursuant to a regulatory scheme. *See Kozel v. Duncan*, 421 Fed. Appx. 843, 849 (10th Cir. 2011) (holding that the district court erred in applying closely-regulated industries exception where law enforcement officers were investigating reports of underage drinking in the plaintiff's club). *See also Club Retro*, 568 F.3d at 197 (citing *New York v. Burger*, 482 U.S. at 700; *Donovan v. Dewey*, 452 U.S. at 599). In the present case, Defendants do not argue that this exception to the requirement of a warrant applies, nor do they identify any regulatory scheme at issue.

off the lights, turning off the music, seizing the patrons for over an hour, and lining them up for sobriety checks—is conduct that "falls outside the normal limits of consent afforded by the general public and violates the Fourth Amendment." *Kozel*, 421 Fed.Appx. at 850. Less intrusive conduct, such as observing patrons, asking patrons for their identification, and asking them questions, does not violate the Fourth Amendment. *See id.* at 850 (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002)). And, in any case, "law enforcement officers do not need a warrant to enter, during normal hours of operation, a business that invites the general public inside." *Id.* at 849 (citing *Maryland v. Macon*, 472 U.S. 463, 469 (1985)).

Plaintiff in the present case does not allege that the Defendant Deputies were acting outside of the contours of what is permissible under *Kozel* and the other authorities cited herein. First, there is no dispute that the premises was open to the public at all times relevant to the Complaint. *See Doc. 23* at ¶¶ 12, 27. Second, it appears that Defendant Deputy Thompson made some effort to avoid disrupting Plaintiffs' business by questioning Plaintiff Michell in the parking lot. *See id.* at ¶ 20. Third, under *Kozel*, law enforcement officers do not exceed "the parameters of the public invitation" by activities such as observing patrons for signs of illegal behavior and using a flashlight in darkened areas to visually inspect patrons' identifications. *See* 421 Fed. Appx. at 850. Thus, Deputy Thompson's question to Plaintiff Michell, "How much have you had to drink tonight?," *see Doc. 23* at ¶ 23, falls within the ambit of permissible activities that do not implicate the Fourth Amendment. Plaintiffs' further allegations that Deputy Thompson "failed and refused to conduct even a cursory investigation" by interviewing none of Plaintiffs' security personnel, *see id.* at ¶ 30, do not redeem Plaintiffs' claim for violation of the Fourth Amendment. To the contrary, the facts alleged in Plaintiffs' Complaint provide no basis

upon which to conclude that the Individual Defendants violated Plaintiffs' Fourth Amendment rights by remaining at the 203 Club after questioning Plaintiff Michell's sobriety.

#### *2. The Court Cannot Find, at Least at This Stage of the Proceedings, that Defendants Had Probable Cause to Arrest Plaintiff Michell.*

"Probable cause is established where 'a substantial probability existed that the suspected committed the crime, requiring something more than a bare suspicion.'" *Storey v. Taylor*, ___ F.3d ___, 2012 WL 4478784 at *3 (D.N.M. Oct. 1, 2012) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)). "An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quoting *Howards v. McLaughlin*, 634 F.3d 1131, 1142 (10th Cir. 2011)). The arrest is lawful, in other words, "as long as probable cause exists for *some* offense." *Id.* at 1193.

Defendants arrested Plaintiff Michell for battery against Mr. Tune. *See Doc. 23* at ¶ 26. Defendants argue that they are generally empowered to make such warrantless arrests based upon information from eyewitnesses, yet there is no information before the Court regarding any eyewitness interviews. *See Doc. 24* at 12. To the contrary, Plaintiffs allege that Deputy Thompson failed to interview the bouncers or other portential witnesses prior to arresting Michell. *See Doc. 23* at ¶ 30. Moreover, according to Plaintiffs, Michell "showed no sign that he was involved in a physical altercation, i.e., his fists were uninjured, his clothes were not torn or stained and he was not overly excited or out of breath." *Id.* Defendants also argue that they could legitimately arrest Plaintiff based upon the statements they contend they were given by Mr. Tune. *See id.* at 13. Plaintiffs allege, "Detective Thompson reported that Mr. Tune had stated Plaintiff and his two 'bouncers hit him from the back as he exited the club though [sic] the front

door, but wasn't sure of what happened after that.'" *See Doc. 23* at ¶ 19. Given all of the information before the Court, I cannot find that a substantial probability existed that Plaintiff Michell assaulted and/or battered Mr. Tune at the time that Defendants arrested Plaintiff Michell.

Defendants also charged Plaintiff with disorderly conduct, *see Doc. 23* at ¶ 29, and they argue that even if probable cause is lacking on the battery charge, it nonetheless existed for the disorderly conduct arrest, *see Doc. 24* at 14.

> Disorderly conduct consists of:
> A. engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace; or
> B. maliciously disturbing, threatening or, in an insolent manner, intentionally touching any house occupied by any person.
> Whoever commits disorderly conduct is guilty of a petty misdemeanor.

NMSA 1978, § 30-20-1 (1963). Factually, Plaintiffs' Amended Complaint provides no support for a disorderly conduct offense. Plaintiffs contend that Plaintiff Michell responded to Deputy Thompson's questions, and only "[w]hen Deputy Thompson persisted in questioning Plaintiff's sobriety," Plaintiff simply "requested that Deputy Thompson either conduct his investigation into Mr. Tune's allegations or leave the premises and allow him to return to work." *Doc. 23* at ¶ 23. After this exchange, Deputy Thompson allegedly handcuffed Plaintiff. *See id.* at ¶ 24. Because there are no allegations before the Court to indicate that Plaintiff Michell was even unreasonably loud at the time of his arrest, let alone violent, abusive, indecent, or profane, I cannot find that there existed a substantial probability that Plaintiff Michell committed disorderly conduct.

## IV. CONCLUSION

Absent probable cause for Plaintiff Michell's arrest, Defendants cannot prevail on their affirmative defense of qualified immunity regarding the arrest. I will therefore deny Defendants' Motion to Dismiss *(Doc. 24)* as to the arrest (Count II) and related state law claims. However, I

also find that Plaintiffs' claims against Defendants Torrance County, TCSD, and Sergeant K. Clark fail to state a claim for which relief may be granted and, further, that Defendants are entitled to qualified immunity with respect to pre-arrest search and/or seizure (Count I).

**Wherefore,**

**IT IS ORDERED** that Defendants' Rule 12(B)(6) Motion to Dismiss *(Doc. 24)* is granted in part and denied in part. All claims against Defendants Torrance County, Sergeant K. Clark, and the Torrance County Sheriff Department are dismissed without prejudice. Likewise, Count I and Count IV (to the extent they are based upon the pre-arrest search and/or seizure) are dismissed without prejudice. Count II and Count IV (to the extent they are based upon the arrest) survive.

Karen B Molzen

**UNITED STATES CHIEF MAGISTRATE JUDGE**