IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RYAN MICHELL and
MICHELL INVESTMENTS, LLC,
a New Mexico Limited Liability Company,

      Plaintiffs,

v.                                                         CIV 12-0316 KBM/GBW

DEPUTY ROY THOMPSON and
FORMER DEPUTY KEITH BLOSS,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Rule 56 Motion for Summary Judgment *(Doc. 43)*, filed October 31, 2012 and fully briefed on December 20, 2012. *Docs. 43, 50, 52, 53.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Docs. 8, 11, 27, 31, 33.* Having reviewed the parties' submissions and the relevant law, I find that Defendants' Motion is well-taken. Because Defendants are entitled to qualified immunity, I will grant summary judgment in their favor.

**I.    BACKGROUND**

This litigation arises out of two incidents at the 203 Club ("Club"), a Moriarty, New Mexico lounge and strip club that is owned and operated by Plaintiffs. Initially, on or about April 4, 2010, Club employees removed a patron, Carl Tune, from the premises. Later that night, Deputy Thompson arrested Plaintiff Ryan Michell in the Club parking lot. Michell was ultimately booked on charges of battery (relating to the incident

involving Mr. Tune), of disorderly conduct, and for detoxification. Plaintiffs allege that Defendants violated their Fourth Amendment rights by illegally remaining upon private property after being asked to leave (Count I) and by arresting and detaining Plaintiff Michell without probable cause (Count II). *See Doc. 23* at 5. Plaintiffs further seek damages under the New Mexico Tort Claims Act for assault, battery, false imprisonment, and false arrest (Count IV[1]). *See id.* at 6.

The Court dismissed Count I, finding that law enforcement officers are generally entitled to enter commercial property for investigative purposes and, further, that Defendants' alleged actions on April 4, 2010 did not violate the Fourth Amendment. *See Doc. 41* at 6-8. The Court also dismissed claims against Torrance County, the Torrance County Sheriff's Department, and Sergeant K. Clark, finding that Plaintiffs failed to make any factual allegations against these named defendants, failed to make even conclusory allegations as to their supervisory roles, and failed to respond to Defendants' Motion to Dismiss regarding these defendants. *See id.* at 5. Thus, the only claims remaining before the Court are Plaintiffs' claim of unlawful arrest and detention in violation of the Fourth Amendment and Plaintiffs' state-law claims pursuant to the New Mexico Tort Claims Act.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*,

---

[1] No Count III exists in Plaintiffs' First Amended Complaint. *See Doc. 23.*

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED. R. CIV. P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2).

The court need only consider the materials cited by the parties. FED. R. CIV. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. FED. R. CIV. P. 56(e). The court is also empowered to grant summary

3

judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f).

## III. ANALYSIS

### A. No Dispute Exists Regarding the Truly Material Facts.

Defendants rely on no less than 54 alleged undisputed material facts in support of their Motion. To be "material," however, a fact must be necessary to the decision, or "a motion for summary judgment may be granted without regard to whether it is in dispute." 10A Charles Alan Wright et al., Federal Practice and Procedure § 2725 (3d ed. 2012). Many of the facts alleged by Defendants, and disputed by Plaintiffs, are not material to summary judgment in this case. Moreover, many of Plaintiffs' "disputed" facts are unsupported by evidence and are therefore not genuine disputes that would preclude the entry of summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

Upon careful review, the Court finds the following material facts undisputed. Deputy Thompson received a call for service from dispatch stating that a fight had occurred at the nightclub. *Doc. 43* at 8, ¶ 2. This fact is supported by his Incident Narrative, which states, "I was contacted by dispatch in reference to a fight at the 203 Topless Bar involving injuries." *See Doc. 43-1*. Plaintiffs maintain, however, that the dispatcher's report of a "fight" at the Club constitutes inadmissible double hearsay. *See Doc. 50* at 2, ¶ 2. The Court finds that the statement is nonetheless admissible pursuant to Fed. R. Evid. 803(8). That Rule provides that hearsay statements contained within public records of "factual findings from a legally authorized investigation" so long as there are no indications of a lack of trustworthiness. Plaintiffs do not present

evidence tending to indicate a lack of trustworthiness regarding Deputy Thompson's Incident Narrative nor do they submit an affidavit pursuant to FED. R. CIV. P. 56(d).

With regard to the dispatcher's underlying characterization of the incident at the Club as a "fight," this statement is not hearsay in that it is not offered to prove that a fight actually occurred. *See* FED. R. EVID. 801(c)(2). Rather, it is relevant to show Deputy Thompson's state of mind or motive in traveling to the Club to question Plaintiff Michell. *See also* FED. R. EVID. 803(3).

Plaintiffs also dispute Carl Tune's characterization of the incident at the Club and his reported injuries. *See Doc. 43* at 8-9, ¶¶ 7-9; *Doc. 50* at 3, ¶¶ 7-9. It is undisputed, however, that in a written statement given the night of the incident, Mr. Tune reported, "I think I was hit from behind and knoked [sic] to the ground and hit agen [sic] in the head and in the back." *See Doc. 43-2*. Plaintiffs dispute whether Mr. Tune was actually "struck from behind" based on Mr. Tune's subsequent testimony more than two years after the incident. In the later affidavit Mr. Tune stated, "I have no memory of [Ryan Michell] ever touching me or how I became injured. I am quite sure that I was not the victim of an attack." *See Doc. 32-1*.

I does not matterl whether Mr. Tune was actually struck from behind on the night of the incident. The material undisputed fact is that Mr. Tune's stated *on the night of the incident* that he was hit from behind, *see Doc. 43-2*, and that he identified Plaintiff Michell or his bouncers as his attackers. *See Doc. 43* at 8, ¶ 7; *see also Doc. 43-2* (Mr. Tune reported, "I don't know if it was the bounser [sic] or the owner I don't remember what happened [sic]."). The appropriate inquiry is whether the *information then available* to Defendants provided reasonable suspicion for an investigative stop and probable

5

cause for arrest of Plaintiff Michell. Similarly, in the summary judgment analysis, materiality lies in the *reported*, not actual, nature and extent of Mr. Tune's injuries. *See Doc. 50* at 3, ¶¶8-9.

### B. Defendants Thompson and Bloss Are Entitled to Qualified Immunity.

To survive the Defendants' Motion, Plaintiffs must show that: (1) Defendants have violated Plaintiffs' constitutional right; and (2) that the alleged constitutional right was "clearly established" at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Defendants are entitled to qualified immunity to the extent Plaintiffs fail to meet either burden of proof. *Id.* (holding that "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

Plaintiffs allege violations of the Fourth Amendment. *See Doc. 23.* The Fourth Amendment protects the public from "unreasonable searches and seizures." *See* U.S. CONST. amend. IV. There are three types of police/citizen encounters recognized by the Supreme Court for purposes of Fourth Amendment analysis: consensual encounters, investigative stops, and arrests. *See Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2006). "These categories are not static and may escalate from one to another." *Cortez v. McCauley*, 478 F.3d 1108, 1115, n.5 (10th Cir. 2007) (en banc).

Defendants contend their contact with Plaintiff Michell began as an investigative stop. *See Doc. 43* at 16. "An officer 'can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'" *Cortez*, 478 F.3d at 1115 (citation omitted). The required "reasonable suspicion" means

"a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* In fact, according to Plaintiffs, Michell's contact with Defendants may well have begun as a consensual encounter. *See Doc. 50* at 4, ¶ 11 ("Mr. Michell voluntarily removed himself from his nightclub where he was working in order to answer the deputy's questions outside the club.").

As discussed earlier, Deputy Thompson's testimony concerning the content of the dispatch call need not be admitted for the truth of the matter, but as to the motivation for his visit to the Club on the night in question. *See* FED. R. EVID. 803(3). Moreover, Deputy Thompson's Incident Report, noting the dispatch call, is also admissible as a public record. *See* FED. R. EVID. 803(8) (providing that records of matters observed while under a legal duty to report, including specifically matters observed by law-enforcement personnel, are admissible over hearsay objections in civil litigation). *See also, e.g., Cooper v. City of New Rochelle*, ___ F.Supp.2d ___, 2013 WL 684747, at *9 (S.D.N.Y., Feb. 26, 2013) (holding that police report of underlying arrest in § 1983 action was admissible pursuant to FED. R. EVID. 803(8), and hearsay statements of confidential information contained therein were also admissible, as "not offered for the truth of the matter asserted but for the purpose of showing that these statements were made to the officers and provided probable cause to arrest and prosecute [the plaintiff]"); *Barrientos-Sanabria v. Holte*, 2012 WL 6107904 (D.Colo., Dec. 9, 2012) (admitting police report from underlying incident in § 1983 action pursuant to FED. R. EVID. 803(8)).

Further, it is undisputed that Deputy Thompson subsequently identified an injured person, Carl Tune, as the victim of an alleged battery at the Club. *See Doc. 43* at 8, ¶¶

3-8; *Doc. 50* at 2, ¶¶ 3-6. Mr. Tune's hearsay statements contained in Deputy Thompson's report fall within the hearsay exceptions under FED. R. EVID. 803(3) and 803(8). Moreover, Defendants need not admit Mr. Tune's statements for their truth when they are offered for Deputy Thompson reason for interviewing Michell. The critical question is whether Deputy Thompson reasonably suspected that Plaintiff Michell may have assaulted Mr. Tune, and the Court so finds.

In fact, according to Plaintiffs, Michell's contact with Defendants may have actually begun as a consensual encounter. Such an encounter requires neither reasonable suspicion nor probable cause. *See Doc. 50* at 4, ¶ 11 ( "Mr. Michell voluntarily removed himself from his nightclub where he was working in order to answer the deputy's questions outside the club."); s*ee Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) ("Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing.").

Deputy Thompson's initial stop of Plaintiff Michell eventually escalated to a full-blown arrest, however, which required more than reasonable suspicion of criminal activity. "A warrantless arrest is permissible when an officer 'has probable cause to believe that a person committed a crime.'" *Cortez*, 478 F.3d at 1115 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). "Probable cause to arrest exists only when the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). Plaintiffs

attack Mr. Tune's initial version of events and argue that it was sufficiently unreliable to support probable cause on the battery charge.

Even if probable cause was found to be lacking for Michell's arrest on the battery charge, probable cause nonetheless existed for Michell's arrest on the additional offense of disorderly conduct and for detoxification. *See Doc. 43* at 16. Because the initial questioning of Michell was lawful regardless of the reliability of information concerning Mr. Tune, information obtained during that encounter can support the probable cause determination for Mr. Michell's arrest for disorderly conduct. Such evidence includes "a strong scent of alcohol coming from Michell when he spoke to Deputy Thompson." *Id.* at 20. Likewise, Defendants rely on testimony that Michell "became belligerent, violent, and verbally abusive towards Deputy Thompson," that Michell characterized Deputy Thompson as a "trespasser" and stating that he was taught to defend himself against trespassers. *Id.* at 20-21. Additionally, Deputy Thompson testifies that he was fearful and felt threatened by Plaintiff Michell. *Id.* at 21.

Defendants also offer an Incident Narrative completed by Sergeant Clarke, who reports that he heard Plaintiff Michell "yelling in the background as I spoke with Deputy Thompson about the night's events. [Michell] continually ordered Deputy Thompson to release him stating that the deputy was on private property and trespassing." *See Doc. 43-3* at 1. Sergeant Clarke supports Deputy Thompson's fearful state of mind, stating that due to Thompson's safety fears, he called dispatch and requested Deputy Keith Bloss to back up Thompson. *See id.* Deputy Bloss reports that he could hear Michell yelling in the background when he contacted Thompson by phone. *See Doc. 43-4.* In his affidavit, Mr. Bloss stated further: "I heard Ryan Michell making verbal threats to

Deputy Thompson. I believed Ryan Michell was a threat to Deputy Thompson's safety. I feared for Deputy Thompson's safety. Michell was verbally abusive and hostile towards Deputy Thompson." *Doc. 43-10*.

These facts are not disputed by Plaintiffs other than Plaintiff Michell's general denials. *See Doc. 50* at 4, ¶¶ 16, 17 (denying intoxication), ¶¶ 22, 23, 25, 26, 28, 29, 30 (denying belligerence, yelling). Plaintiff Michell's self-serving denials are not sufficient to establish a genuine fact dispute or defeat summary judgment. *See, e.g., Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n.4 (10th Cir. 2012); *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010). The undisputed material facts alleged show probable cause existed to arrest Plaintiff Michell for disorderly conduct. *See Doc. 41* at 9 (noting definition of "disorderly conduct" under New Mexico law as including "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace").

Finally, it should be noted that "[a]n arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quoting *Howards v. McLaughlin*, 634 F.3d 1131, 1142 (10th Cir. 2011)). The arrest is lawful, in other words, "as long as probable cause exists for *some* offense." *Id.* at 1193 (emphasis in original).

### C. Defendants Are Entitled to Summary Judgment On Plaintiffs' State Law Claims for Assault, Battery, False Imprisonment and False Arrest.

Because probable cause existed to arrest Plaintiff Michell, Plaintiffs' state-law claims for false imprisonment and false arrest cannot survive summary judgment. *See Santillo v. New Mexico Dept. of Pub. Safety*, 173 P.3d 6, 10 (2007) ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment."). Moreover, as Defendants note in their Motion *(Doc. 43)*, Plaintiffs have "not made any allegations that the officers used excessive force during the arrest. Plaintiff was not taken to the ground during the arrest. Plaintiff has not alleged that his arms were twisted when he was handcuffed, that the handcuffs were adjusted too tightly, or even that the position of his hands or arms caused him to experience pain during the course of his arrest or transport to the police station." *Doc. 43* at 25. In the face of these statements, Plaintiffs fail to articulate any argument or material facts in support of their assault and battery claims. *See generally Doc. 50*. As a result, summary judgment is appropriate as to Count IV, including all state law claims.

## IV. CONCLUSION

Because the undisputed material facts in this case show that (1) Plaintiff Michell either consented to his initial encounter with Deputy Thompson or Deputy Thompson had reasonable suspicion to make an investigatory stop of Plaintiff Michell; and (2) information lawfully obtained by the Defendants supported probable cause to arrest Michell for disorderly conduct. Therefore, Plaintiffs have not demonstrated any violation of their constitutional rights,and Defendants are entitled to qualified immunity as to Plaintiffs' Count II. Further, because Plaintiffs have not articulated any facts to support

their claims of assault and battery, and because Defendants' probable cause for Plaintiff Michell's arrest means Defendants cannot be held liable for false arrest or false imprisonment under state law, summary judgment is also as to Count IV.

**Wherefore,**

**IT IS HEREBY ORDERED** that Defendants' Rule 56 Motion for Summary Judgment (Doc. 43) is granted. Summary judgment will be entered in favor of Defendants on all claims.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE